UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **JONATHAN JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| V. ) | CASE NO. |
| ) | |
| **KROGER CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff, Jonathan Johnson ("Plaintiff"), through his attorney Rachel J. Guin, states his complaint against Defendant Kroger Corporation ("Defendant") as follows:

## I.  INTRODUCTION

1. Plaintiff asserts that the Defendant did discriminate against the Plaintiff, failed to engage in the interactive process and failed to reasonably accommodate the Plaintiff's disability (traumatic brain injury), in violation of the ADA Amendments Act of 2008 42 U.S.C. § 12111 *et seq.* ("ADAAA").

2. Plaintiff further asserts that Defendant did discriminate against the Plaintiff, failed to engage in the interactive process and failed to reasonably accommodate Plaintiff's right to observe and practice his religion on Sundays, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

3. Plaintiff filed his Charge of Discrimination on February 1, 2018, which is incorporated herein as Exhibit "A" (Charge No. 470-2018-01417) and received his Notice of Suit Rights, incorporated herein as Exhibit "B," on February 13, 2019.  All administrative prerequisites have been met and filing of this Complaint is timely.

## II. JURISDICTION

4. This cause represents federal questions over which this Court has jurisdiction pursuant to 28 USC § 1331.

5. Venue is appropriate in this Court pursuant to 28 USC § 1391, as Defendant operates in and is a citizen of this judicial district and as all of the events or omissions giving rise to the claim occurred in this judicial district.

## III. PARTIES

6. Plaintiff is a qualified employee who suffered from a traumatic brain injury as an infant, which left him mentally deficient, interfering with his ability to understand (think and learn) and comprehend information in a manner that would allow him to live independently, operate a vehicle or other heavy machinery, balance a checkbook or handle money with any proficiency, interpret sarcasm or other social undertones, all qualifying him as disabled pursuant to the ADAAA.

7. Plaintiff and his family are devout Christians, practicing their faith with the Church of Nazarene. Plaintiff was able to obtain his Local Minister's License with the support of the Church Board, which, in part, requires his presence at church on Sunday throughout the entirety of the day and into the evening.

8. Defendant is a grocery chain that operates business throughout the Midwest, including Columbia City, Indiana. Defendant is an employer for purposes of Title VII and ADAAA.

## IV.  FACTS

9. Plaintiff began his employment with the Defendant in October 2014 as a grocery bagger.  During Plaintiff's hiring interview, he explained that he suffered from a disability and could not drive. Transportation to and from work was available to him on all shifts Monday through Saturday, but not on Sunday.  In addition, he explained that he was very involved in his church and exercised Sunday as his day of worship.  Each of these things prevented the Plaintiff from being available for work on Sunday.  The Defendant told Plaintiff that this would not be a problem, however, he may be required to work every Saturday in exchange for Sundays.  Plaintiff agreed to this arrangement and did work nearly every Saturday throughout his employment.

10. For the duration of his employment the Plaintiff performed at or above Defendant's expectations.  Plaintiff never called in sick, arrived late or had any write-ups.  Plaintiff was frequently called in to work on his days off (excluding Sundays).

11. Mid-2017, Defendant promoted an employee to Assistant Manager/Floor Manager ("Amanda").  Prior to her promotion, Plaintiff reported what he believed to be harassing and discriminatory comments by Amanda.  Amanda would tell Plaintiff that he "needed to learn how to drive" or "get a license," knowing that Plaintiff's disability prevented him from obtaining a driver's license.  The inability to drive has forced Plaintiff to rely on others for transportation and he strives to someday obtain a driver's license.  Amanda's comments were derogatory in nature and created significant emotional distress for the Plaintiff. Amanda and/or Plaintiff's non-disabled co-workers were not mocked and treated with disdain in the same manner as Plaintiff.  Management told Plaintiff that they would deal with Amanda's discriminatory behavior.  Instead, they promoted her.

12. After Amanda was promoted, Plaintiff reported her behavior to upper-management, but no corrective action was taken.

13. On Saturday, October 20, 2017, Plaintiff saw that he had been put on the schedule for the following Sunday. Plaintiff went to the front manager ("Brian B.") who said he would take care of it before noon. Later in the day, Brian B. approached Plaintiff and told him that he had not made the change in time and now it was too late. Plaintiff went to Amanda and asked if she realized that she had scheduled him for Sunday. Amanda informed the Plaintiff that she realized she had made the mistake and reported it to upper management but did not know how to fix it. She stated that she was too busy at that time but would try to resolve it later. Before Plaintiff left work that day, he asked Amanda if she had been able to fix the schedule. She had not but told him that she would speak with him on Wednesday.

14. When Plaintiff arrived to work on Wednesday, Amanda brought him upstairs and told him that there had been a policy change, and everyone is now mandated to work on Sundays. Amanda told Plaintiff he could choose one of the three shifts available on Sundays. Plaintiff reiterated that he could not work on Sundays as it is his day of worship and even if he were able to complete his church and worship activities, he would not have transportation at any time of the day, because he cannot drive due to his disability and his parents are not available to transport him. Plaintiff asked if he could have a meeting with Amanda, the General Manager ("Brian S.") and Plaintiff's mother to discuss his work schedule. Plaintiff asked that his mother be present because his disability often interferes with his ability to comprehend and process information. Plaintiff's family frequently assists him with his daily activities. Amanda told Plaintiff that she was not going to agree to the meeting, because the policy was not going to change. However, it would be up to Brian S. if he wanted to participate in a meeting. Plaintiff then went to the Floor Assistant Manager

("Paden") and asked if Plaintiff, Paden and his mother could meet to discuss the new schedule change. Initially, Paden agreed to a meeting with the Plaintiff, but not his mother. Later, Paden agreed to a meeting with all three of them.

15. When Plaintiff's mother arrived to pick him up from work, Plaintiff notified her of the situation. Plaintiff, Plaintiff's mother, Paden and a member of Defendant's Human Resources Department ("Danielle") participated in the meeting. During the meeting Defendant was reminded of the Complaints made about Amanda with no corrective action. Paden told the Plaintiff to be sure to come to Paden directly if he had issues with Amanda. Then Paden accused Plaintiff of not being "innocent" because Plaintiff is a "tattletale" – even though he had just been told to report to Paden with concerns. As the meeting progressed, the issue of working Sundays was discussed. Plaintiff was told that Sundays are mandatory, and he would be written-up for the first two Sundays he missed and fired on the third.

16. The following day Plaintiff and his mother met with the Brian S., hoping for a better result. Plaintiff presented a letter to Brian S. explaining what had transpired, Plaintiff's disability and religious convictions. Brian S. reviewed the letter and said, "you're right Jonathan, you have a great work ethic." Unfortunately, Brian S. was unwilling to ensure that Jonathan would not be scheduled on Sundays and/or written-up and ultimately fired if he didn't appear for work on those Sundays. Jonathan said that he could not work on Sundays, but offered to finish out his remaining schedule, which Brian S. accepted. With the knowledge that he would be fired for his inability to work, Jonathan resigned, resulting in a constructive discharge.

## V. LEGAL CLAIMS

### Title VII – Religious Discrimination/Failure to Engage or Accommodate

17. Plaintiff incorporates paragraphs 1 – 16 herein.

18. Plaintiff has bona fide religious observances and practices that prohibit him from working Sundays.  Defendant hired Plaintiff with the knowledge and agreement that Plaintiff would not work Sundays.

19. After telling Plaintiff that the Sunday scheduling was an error, Defendant then asserted that its policy changed and later asserted that it was a seniority issue with the Union, all without engaging in an interactive process with Plaintiff.  Defendant ultimately told Plaintiff that he would be fired if he did not work on Sundays.

20. Plaintiff could not work on Sundays and was constructively discharged.

21. Defendant acted in violation of Title VII when it refused to engage in interactive process which ultimately led to Plaintiff's constructive discharge.

22. The Defendant's unlawful conduct was willful. The Plaintiff has suffered injury due to the Defendant's conduct in the form of lost wages, emotional damages and distress and other damages and injuries.

23. The Defendant's unlawful and discriminatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights under Title VII entitling the Plaintiff to economic damages, compensatory damages, punitive damages and attorney fees and costs.

### Title VII – Retaliation

24. Plaintiff incorporates paragraphs 1-23 herein.

25. Plaintiff asserts that he did engage in the protected activity of complaining about discrimination and harassment.

26. Defendant retaliated against Plaintiff after engaging in protected activity calling the Plaintiff a "tattletale" for engaging in protected activity and refusing to accommodate Plaintiff's inability to work Sundays all in violation of Title VII.

27. The Defendant's unlawful conduct was willful. The Plaintiff has suffered injury due to the Defendant's conduct in the form of lost wages, emotional damages and distress and other damages and injuries.

28. The Defendant's unlawful and discriminatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights under Title VII entitling the Plaintiff to economic damages, compensatory damages, punitive damages and attorney fees and costs.

## ADAAA – Discrimination/Hostile Work Environment

29. Plaintiff incorporates paragraphs 1 – 28 herein.

30. During Plaintiff's employment with the Defendant, Plaintiff was subjected to severe and pervasive comments, by co-workers and management, regarding his disability. Plaintiff complained to management about the harassment, but management took no corrective action.

31. Defendant acted in violation of the ADAAA when they failed to take any corrective action to protect Plaintiff from harassing and discriminatory treatment by Plaintiff's co-workers and eventual supervisor.

32. The Defendant's unlawful conduct was willful. The Plaintiff has suffered injury due to the Defendant's conduct in the form of lost wages, emotional damages and distress and other damages and injuries.

33. The Defendant's unlawful and discriminatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights pursuant to the ADAAA entitling the Plaintiff to economic damages, compensatory damages, punitive damages and attorney fees and costs.

### ADAAA – Retaliation

34. Plaintiff incorporates paragraphs 1-33 herein.

35. Plaintiff asserts that he did engage in the protected activity of complaining about discrimination and harassment.

36. Defendant retaliated against Plaintiff after engaging in protected activity calling the Plaintiff a "tattletale" for engaging in protected activity and refusing to accommodate Plaintiff's inability to work Sundays all in violation of the ADAAA.

37. The Defendant's unlawful conduct was willful. The Plaintiff has suffered injury due to the Defendant's conduct in the form of lost wages, emotional damages and distress and other damages and injuries.

38. The Defendant's unlawful and discriminatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights pursuant to the ADAAA entitling the Plaintiff to economic damages, compensatory damages, punitive damages and attorney fees and costs.

### ADAAA – Failure to Engage/Accommodate

39. Plaintiff incorporates paragraphs 1 – 38 herein.

40. Plaintiff suffers from a disability that prohibits him from driving and thereby preventing Plaintiff from working on Sundays. Defendant hired Plaintiff with the knowledge and agreement that Plaintiff would not work Sundays.

41. After telling Plaintiff that the Sunday scheduling was an error, Defendant then asserted that its policy changed and later asserted that it was a seniority issue with the Union, all without engaging in an interactive process with Plaintiff. Defendant ultimately told Plaintiff that he would be fired if he did not work on Sundays.

42. Plaintiff could not work on Sundays and was constructively discharged.

43. Defendant acted in violation of ADAAA when it refused to engage in interactive process which ultimately led to Plaintiff's constructive discharge.

44. The Defendant's unlawful conduct was willful. The Plaintiff has suffered injury due to the Defendant's conduct in the form of lost wages, emotional damages and distress and other damages and injuries.

45. The Defendant's unlawful and discriminatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights pursuant to the ADAAA entitling the Plaintiff to economic damages, compensatory damages, punitive damages and attorney fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays that this Court enter judgment against Defendant, and grant the following relief:

1. Reimbursement of Plaintiff's wage loss, and other economic damages, in an amount to be determined, plus interest at the statutory rate;

2. All other damages, including compensatory and emotional damages, and punitive damages shown to be causally related to Defendant's conduct which violated Title VII and the ADAAA.

3. Prejudgment interest.

4. Costs and attorney fees and other costs related to this action; and

5. All other relief available to him at law or in equity.

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried to a jury.

Respectfully Submitted:

/s/Rachel J. Guin
Rachel J. Guin  #31722-02
**EILBACHER FLETCHER, LLP**
803 S. Calhoun Street, 4th Floor
Fort Wayne, Indiana 46802
Telephone:     (260) 425-9777
Facsimile:     (260) 424-9177
Email:          guin@eflawyers.com